IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**PATRICK SHANNON HAFT**,

    Petitioner,

  v.

**UNITED STATES OF AMERICA**,

    Respondent.

Case No. 3:12-cr-00042-SI

**OPINION AND ORDER**

Dennis N. Balske, Law Office of Dennis N. Balske, 621 S.W. Morrison Street, Suite 1025, Portland, OR 97205. Attorney for Petitioner.

S. Amanda Marshall, United States Attorney, and Leah K. Bolstad, Assistant United States Attorney, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Attorneys for Respondent.

**Michael H. Simon, District Judge.**

    Before the Court is petitioner Patrick Shannon Haft's ("Haft") motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Dkt. 64. For the following reasons, the motion is GRANTED IN PART.

**STANDARDS**

    Section 2255 permits a prisoner in custody under sentence to move the court that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255(a).

PAGE 1 – OPINION AND ORDER

<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

Under Section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255). In determining whether a Section 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (citation and quotation marks omitted). A district court may dismiss a Section 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062-63 & n.3 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)); *see also United States v. Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir. 1998); *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). Conclusory statements in a Section 2255 motion are insufficient to require a hearing. *Hearst*, 638 F.2d at 1194.

The leading federal case governing claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Under *Strickland*, a challenger must prove: (1) that counsel's performance was deficient; and (2) that there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.

Under the first *Strickland* prong, in order for counsel's performance to be constitutionally deficient, it must fall below an objective standard of reasonableness. *Id.* A "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687).

"*Strickland* held that 'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Smith v. Mahoney*, 611 F.3d 978, 986 (9th Cir. 2010) (quoting *Strickland*, 466 U.S. at 691).[1] The specific standards governing counsel's duty to investigate provide:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
>
> . . . And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Miles v. Ryan*, 713 F.3d 477, 490 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 690-91). The *Strickland* standard governing counsel's obligations to investigate and present mitigating

---

[1] *Strickland v. Washington* and *Wiggins v. Smith*, 539 U.S. 510 (2003), both involved the assistance of counsel in the penalty phase of a capital case. The Supreme Court has clarified that a right to counsel exists during sentencing in a noncapital case. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *see also Davis v. Grigas*, 443 F.3d 1155, 1159 (9th Cir. 2006) (Graber, J., concurring) (explaining that *Strickland* applies "to a noncapital sentencing that is 'formal' and that involves findings or conclusions that provide a standard for the imposition of sentence").

evidence applies at sentencing. *Cox v. Del Papa*, 542 F.3d 669, 678 (9th Cir. 2008) (citing *Wiggins v. Smith*, 539 U.S. 510, 521-23 (2003)).

Under the second *Strickland* prong, prejudice is established where there is "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. To show prejudice in the context of a plea of guilty, the challenger must demonstrate that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Smith v. Mahoney*, 611 F.3d 978, 986 (9th Cir. 2010) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative choices of action open to the defendant." *Hill*, 474 U.S. at 56 (citation and quotation marks omitted). In the sentencing phase of a noncapital case, trial counsel error that results in prejudice can satisfy the second prong of *Strickland*. *Glover*, 531 U.S. at 204 (holding that a showing of prejudice in an ineffective assistance of counsel claim does not require a significant increase in the term of imprisonment and that prejudice is shown where there is "any amount of [additional] jail time"); *see also United States v. Kwan*, 407 F.3d 1005, 1018 (9th Cir. 2005 (quoting *United States v. Castro*, 26 F.3d 557, 560 (5th Cir. 1994)), *abrogated on other grounds by Padilla v. Kentucky*, 130 S. Ct. 1473 (2010).

Because a convicted defendant must satisfy both prongs of the *Strickland* test, his failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at 699 (explaining that it is not necessary for a court evaluating the merits of an ineffective assistance claim to analyze the components of the applicable test in any particular order or to evaluate both components if the petitioner fails to carry his burden as to one aspect of the test). Where the *Strickland* test is satisfied, the remedy under Section 2255 is

that the court "shall vacate and set aside the judgment" and do one of four things: "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## BACKGROUND

On February 1, 2012, a federal grand jury issued a four-count indictment charging Haft with (1) Possession with Intent to Distribute Heroin; (2) Possession with Intent to Distribute Cocaine; (3) Possession with Intent to Distribute Methamphetamine; and (4) Felon in Possession of Ammunition, as well as including a criminal forfeiture allegation. The Government extended a plea agreement to Haft. The plea agreement was negotiated by Assistant United States Attorney ("AUSA") Leah Bolstad on behalf of the Government and was approved by AUSA Scott Kerin (Gang Unit Chief) and AUSA John Deits (Drug Unit Chief). Pursuant to the plea agreement, Haft was to plead guilty to Counts 1 and 4 of the Indictment. The mandatory minimum term of imprisonment on Count 1 is ten years and the maximum term is life. 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A)(i). The maximum term of imprisonment on Count 4 is ten years. 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(a)(2).

On January 8, 2013, Haft pleaded guilty to Counts 1 and 4 of the Indictment. At the change of plea hearing, the Court asked Haft if he was "fully satisfied with the legal counsel, the representation, the legal advice given to [him] in this case so far by [his] attorney, Ms. Morgan?" Haft replied: "I am." The plea agreement provided that Haft was not "safety valve eligible" under U.S.S.G. § 5C1.2. The plea agreement also provided that trial counsel could seek a downward departure, adjustment, or variance based on the factors listed in 18 U.S.C. § 3553(a), but could not request a sentence lower than the mandatory minimum of ten-years imprisonment. Under the please agreement, Haft's right to appeal and to seek post-conviction relief was limited

PAGE 5 – OPINION AND ORDER

under Section 2255 to challenges based on ineffective assistance of counsel, as provided in Federal Rule of Criminal Procedure 33 and 18 U.S.C. § 3582(c)(2).

At the sentencing hearing on April 8, 2013, the Government recommended a sentence of 135-months imprisonment, at the low end of the advisory guideline range. Defendant's trial counsel asked for a sentence of the mandatory minimum of ten years. Also at the hearing, defense counsel presented mitigation evidence including witnesses and letters to the Court. Under the United States Sentencing Commission Guidelines Manual, Haft's offense level of 33 and Criminal History Category of II rendered an advisory guideline imprisonment range of 151 months to 188 months. Haft was sentenced on April 8, 2013, consistent with defense counsel's sentencing request, to a sentence of 120 months' imprisonment each for Count 1 and Count 4 to be served concurrently, followed by a period of supervised release, and the mandatory special assessment fee.

On August 15, 2013, Haft timely filed this post-conviction motion pursuant to 28 U.S.C. § 2255. Haft petitions to vacate, set aside, or correct his sentence on the basis that his trial counsel provided ineffective assistance. Haft specifically alleges that his trial counsel: (1) failed to investigate and present persuasive mitigation evidence to the prosecution during plea negotiations; and (2) failed to investigate and correct incorrect information in the sentencing phase of the proceedings. The Court held a hearing on Haft's motion on December 12, 2013.

## DISCUSSION

### A. Jurisdiction

The Government argues that Haft's Section 2255 motion is jurisdictionally barred because it is a challenge to the execution of Haft's sentence. Haft argues that he is not challenging the manner in which the sentence was executed, but instead, claiming that counsel was ineffective at the plea bargaining and sentencing phases of his case. "'Generally, motions to

PAGE 6 – OPINION AND ORDER

contest the legality of a sentence must be filed under [Section] 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to [Section] 2241 in the custodial court.'" *Harrison v. Ollison*, 519 F.3d 952, 956 (9th Cir. 2008) (quoting *Hernandez v. Campbell,* 204 F.3d 861, 864 (9th Cir. 2000)). The text of Section 2255 permits a challenge to a sentence that was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. A petitioner may raise a claim of ineffective assistance of counsel in a Section 2255 motion. *United States v. Nunez*, 223 F.3d 956, 959 (9th Cir. 2000).

The Court finds that Haft is challenging the legality of his sentence, and specifically attacking trial counsel's representation as ineffective at the plea and sentencing phases of his case. *See United States v. Giddings*, 740 F.2d 770, 772 (9th Cir. 1984) ("A petition under Section 2255 can test only the propriety of the sentence imposed, not the manner of execution."). Although the implication of the Court's analysis may potentially affect the location of the execution of Haft's sentence, his legal argument is not grounded on the inadequacy of the Federal Correctional Institute to which he was assigned. Instead, Haft argues that trial counsel's performance was legally deficient under the Sixth Amendment. *See United States v. Span*, 75 F.3d 1383, 1386-87 (9th Cir. 1983) ("Claims of ineffective assistance of counsel can be raised for the first time on a section 2255 motion.").

## B. Ineffective Assistance of Counsel

Haft argues that he received ineffective assistance of counsel on two grounds: (1) because trial counsel failed to investigate and present persuasive mitigation evidence to the Government during plea negotiations, or to raise this evidence with the relevant supervisors in the U.S. Attorney's Office; and (2) because trial counsel failed to investigate and correct allegedly incorrect information in the presentence report ("PSR") that was relied on by both the Court

PAGE 7 – OPINION AND ORDER

during Haft's sentencing and the Federal Bureau of Prisons ("BOP") in deciding where to assign Haft. The Court addresses each argument in turn.

### 1. Counsel Was Not Ineffective in Representing Haft During Plea Negotiations

Haft argues that trial counsel failed to gather relevant mitigation evidence from Dr. William Stack, Haft's psychiatrist at MacLaren Youth Correctional Facility, before the plea agreement was reached. Haft alleges that this failure prevented trial counsel from arguing for a sentence below the ten-year mandatory minimum. Haft also argues that additional mitigation evidence would have enabled trial counsel to persuade AUSA Bolstad's supervisor that Haft should receive a sentence below the statutory mandatory minimum. Haft asserts that these errors resulted in prejudice.

#### a. Reasonableness

Trial counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "In assessing the reasonableness of an attorney's investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527.

With respect to the plea negotiation phase of Haft's case, AUSA Bolstad's declaration demonstrates that trial counsel did present the Government with mitigation evidence before Haft's sentencing. Dkt. 79 at ¶ 4. Further, AUSA Bolstad's declaration clarifies that there were only two available legal avenues for Haft to get a sentence below the statutory mandatory minimum: (1) through the safety valve provision in U.S.S.G. § 5C1.2; or (2) by providing substantial assistance as defined in U.S.S.G. § 5K1.1. *Id.* at ¶ 5. Haft does not contest this conclusion. Neither potential avenue for relief warranted additional investigation by trial counsel.

PAGE 8 – OPINION AND ORDER

First, Haft's PSR calculated his criminal history score at three. Under the safety valve provision in U.S.S.G. § 5C1.2, any score more than one makes a person ineligible for a sentence issued without regard to the statutory minimum. U.S.S.G. § 5C1.2(a)(1). Thus, any additional evidence from Dr. Stack would have had no bearing on the safety valve provision.

Second, regarding substantial assistance, the commentary to the Guidelines Manual provides that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to obtain." Guidelines Manual § 5K1.1, Application Note 3. Haft attempted to get credit for substantial assistance by removing an assault rifle from the streets. *See* Dkts. 79 at ¶ 3, 64-1 at 5. An email exchange between Haft and trial counsel demonstrates that that trial counsel was: (1) focused on getting mitigation credit for substantial assistance; (2) worked to confirm that an assault rifle was recovered by law enforcement; and (3) gathered additional letters of support in addition to finishing other investigation reports in order to argue for a sentence under the mandatory minimum. Dkt. 64-1 at 5. Ultimately, AUSA Bolstad found that Haft did not provide substantial assistance because he "declined to name sources of supply or those involved with the gun incident, and he was not willing to testify against anyone." Dkt. 79 at ¶ 3. Furthermore, the firearm produced by Haft was not the specific firearm AUSA Bolstad requested Haft to produce. The Government did credit Haft with a one-level downward variance pursuant to Section 3553(a) because he helped to get a different assault rifle off the streets. *Id.*

In this case, trial counsel made a strategic choice regarding the level of investigation needed to qualify Haft for a sentence below the statutory minimum. Trial counsel's decision not to seek additional evidence regarding Haft's mental assessment while at MacLaren was reasonable—such an inquiry was irrelevant to establishing the facts needed for a substantial

PAGE 9 – OPINION AND ORDER

assistance credit. *See Strickland*, 466 U.S. at 691 (explaining that a reasonable decision that makes a particular investigation unnecessary is consistent with the Sixth Amendment); *Wiggins*, 539 U.S. at 523 (explaining that "reasonableness" is evaluated "under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time'" (citation omitted)). On this basis alone, trial counsel was not ineffective in representing Haft during plea negotiations.

Haft also asserts that trial counsel ought to have approached AUSA Bolstad's supervisors and requested a sentence recommendation below the statutory minimum. Haft argues that with additional mitigation evidence in hand—specifically, evidence rebutting the notion that he engaged in "anti-social behavior" and had a "serious history of violence"—AUSA Bolstad or her supervisors may have been willing to find a way around the mandatory minimum. As noted above, this evidence would have had no bearing on Haft's criminal history score or his substantial assistance credit. That credit was contingent on Haft producing a specific assault rifle, which he failed to do.

To support his argument on the pending motion, Haft provided criminal defense attorney Lawrence Matasar's expert opinion that "counsel should have gathered relevant mitigation evidence and presented it to the prosecution to attempt to obtain a plea bargain that would have permitted trial counsel to argue for a sentence of less than ten years," and if this proved unsuccessful, "trial counsel should have taken the matter up" with AUSA Bolstad's supervisor. Dkt. 82-1 at 11, ¶ 3. Under Count 1, however, Haft was facing a statutory minimum term of imprisonment of ten years. 21 U.S.C. §§ 841(a)(1); 841(b)(1)(A)(i). Trial counsel's choice not to push for the ability to argue for a lower sentence, given this fact, was a strategic choice related to available, plausible options. *See Strickland*, 466 U.S. at 691. What is more, both relevant

PAGE 10 – OPINION AND ORDER

supervising AUSAs that reviewed Haft's plea agreement provided affidavits to the Court stating that even considering all the mitigation evidence now before the Court, they still would not approve a plea agreement lower than the ten-year statutory minimum. Dkts. 77, 78. Considering the situation as a whole, trial counsel's strategy was a reasonable, well-supported strategic choice.

### b. Prejudice

Although the Court is not required to consider the second prong of the *Strickland* test, the Court also finds that trial counsel's decision not to investigate further at the plea negotiation phase did not result in prejudice. Haft has not "affirmatively prove[n] prejudice." *See Strickland*, 466 U.S. at 693; *see also Lambert v. Blodgett*, 393 F.3d 943, 982-83 (9th Cir. 2004) ("Courts have generally rejected claims of ineffective assistance premised on a failure to investigate where the record demonstrates that the defendant would have pled guilty despite the additional evidence.").

There is no evidence that Haft would not have entered the plea agreement if trial counsel had presented this new mitigation evidence. *See Smith*, 611 F.3d at 986. Moreover, none of the additional mitigation evidence would result in Haft receiving a sentence less than the statutory minimum. As explained above, only additional substantial assistance credits would have sufficed. Thus, even if trial counsel's performance were deficient, there is not a reasonable probability that the "result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### 2. Trial Counsel's Representation of Haft at Sentencing Resulted in Prejudice

Haft also argues that trial counsel made two errors during the sentencing phase of the proceedings by: first, failing to remove any mention of a gang affiliation from the PSR; and second, failing to clarify the non-violent nature of his prior conviction for manslaughter. Haft

PAGE 11 – OPINION AND ORDER

argues that these errors resulted in prejudice because, but for trial counsel's errors, there is a reasonable probability that the Court would have exercised its discretion in Haft's favor by amending the PSR and more vigorously recommending to the BOP that Haft be placed at a Federal Prison Camp, rather than at a Federal Correctional Institution, to serve his sentence.

### a. Reasonableness

Haft first argues that trial counsel failed to correct portions of the PSR that implied that Haft was a gang member. The Court notes that there is no merit to this claim because neither the PSR nor the ultimate facility designation by the BOP was based on an alleged gang affiliation. *See* Dkts. 75 at 12, 76 at ¶ 7 ("Mr. Haft's security point total was not increased nor affected by any purported gang affiliation or membership.").

Haft's remaining argument is that trial counsel failed to correct statements in the PSR before sentencing that referenced his prior juvenile conviction for manslaughter. Haft argues that trial counsel assumed that a ten-year statutory minimum sentence automatically would preclude him from serving his sentence at a Federal Prison Camp. Haft contends that trial counsel's erroneous assumption was the reason that she failed to investigate and object to elements of the PSR that mischaracterized Haft's previous conviction for manslaughter.

Haft's argument is supported by facts in the record. Haft's trial counsel stated in her declaration to the Court: "I did not know that a sentence of ten years does not preclude a client from camp eligibility. I believed that it did, so I made no effort to have the PSR amended in such a way that Mr. Haft would have a better opportunity for a camp designation." Dkt. 82-1 at ¶ 3. In addition, Haft's expert witness, Matasar, stated in his declaration: "Defense counsel should have known that a sentence of ten years does not preclude a client from camp eligibility. She should have taken actions to assist Mr. Haft in attempting to obtain a camp designation. Counsel's

PAGE 12 – OPINION AND ORDER

failure to do so fell below the standard of practice for Oregon Federal District Courts." Dkt. 64-1 at ¶ 5.

The declaration of Catricia Howard, an employee of the Bureau of Prisons and Senior Designator at the Designation and Sentence Computation Center, confirms the trial counsel's error and its effect of Haft. Howard noted that before making any adjustments to Haft's security point total, Haft's raw score correlated with a minimum security level. Dkt. 76 at ¶ 6. Howard explained that "the 10-year sentence imposed by the Court did not preclude [Haft] from eligibility for a minimum security designation." *Id.* at ¶ 7. Howard concluded that "the facts recounted in the [PSR's] description of [Haft's prior manslaughter conviction] showed that Mr. Haft has a serious history of violence that is not adequately or accurately accounted for by his security point total score." *Id.* In particular, in "paragraph 50 of [Haft's PSR, there] were *significant factors* in my determination that a ["Greater Security Management Variable" or "MGTV"] based on a history of serious violence was appropriately applied to Mr. Haft." *Id.* (emphasis added). Ultimately, Howard "applied an overriding Management Security Level ("MSL") to reflect the inmate's assessed security needs" and "chang[ed] his designation from a Minimum to a Low Security facility." *Id*. This MSL took precedence over the security-score level that would have qualified Haft for a Federal Prison Camp. *Id*.

The text of paragraph 50 of the PSR, relied on by this Court and the BOP, contains facts that Haft argues are false. Haft's prior conviction for manslaughter is described in paragraph 50, in relevant part, as including the following events: "[Haft] and three other individuals . . . drove to [the victim's] residence. . . . Each brought baseball bat(s) with the intention of beating the victim. When the victim arrived, they beat him repeatedly with bats, crushing his skull, and

PAGE 13 – OPINION AND ORDER

ultimately causing his death. . . . The police report is unclear as to defendant's [Haft's] specific involvement, but clearly indicates his presence and participation." Dkt. 48 at 13, ¶ 50.

In support of his contention that this information was erroneous, Haft provided the declaration of Judith Bryant, former Chief Deputy District Attorney for Lincoln County, Oregon, who was the prosecutor in Haft's prior manslaughter conviction. Dkt. 82-1 at 4, ¶ 1. Bryant stated that her "investigation led to the conclusion that . . . [Haft] did not have a baseball bat or any other weapon. It is believed that Mr. Haft did not participate in the attack, but backed away and watched the beating. There is no indication that Mr. Haft struck the victim. [Haft] displayed no violence to the victim." *Id.* at ¶ 2.

The text of paragraph 50 reasonably leads to the conclusion that Haft's prior conviction for manslaughter involved serious violence on his part. Although the PSR states that the "police report is unclear as to [Haft's] specific involvement," it concludes that the police report "clearly indicates [Haft's] presence *and participation*" (emphasis added). Bryant's declaration directly undermines the veracity of paragraph 50 of the PSR. Although Bryant's statement corroborates the conclusion that Haft was present at the scene of the crime, it does not support the conclusion that he participated in beating the victim to death – or even striking the victim even once.

Based on the declarations of Haft's trial counsel, Matasar, Howard, and Bryant, as well as the PSR, there is sufficient evidence that trial counsel's performance fell below a reasonable standard of care.[2] *See Williams v. Taylor*, 529 U.S. 362, 396 (2000) (holding that counsel's

---

[2] At oral argument, the Government asserted that whether the PSR contains erroneous information is speculative, and therefore, there is no basis to conclude that trial counsel's performance was deficient or that an alleged error resulted in prejudice. The Court finds that the Government has provided no evidence undermining Bryant's declaration or demonstrating that paragraph 50 of the PSR is accurate and not misleading. Thus, based on the information before the Court, there is a sufficient basis to conclude that trial counsel's performance fell below a

failure to uncover and present mitigating evidence at sentencing could not be justified as a tactical decision because counsel had not "fulfill[ed] their obligation to conduct a thorough investigation of the defendant's background" (citing 1 ABA Standards for Criminal Justice 4-4.1, commentary, p. 4-55 (2d ed. 1980)). Trial counsel's strategic decisions at sentencing were based on an erroneous understanding of the law, which trial counsel failed to verify with a reasonable investigation. By failing to investigate the validity of the base assumption that Haft was ineligible for a camp designation by the BOP and attempt to correct Haft's PSR that would be considered by the Court and the BOP, trial counsel erred. The Court finds that there is sufficient evidence in the record to support the first prong of *Strickland* on this claim.

      **b. Prejudice**

The Court also finds that Haft has established prejudice under the second *Strickland* prong. The *Strickland* test to show prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. To demonstrate this, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the case." *Id.* at 693. Instead, a "reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at 694.

Haft alleges that, but for trial counsel's deficient performance, the outcome of his sentencing would have differed in one important respect. Specifically, Haft notes that this Court has the authority both to alter the contents of the PSR and to make a recommendation to the BOP that Haft should serve his sentence at a Federal Prison Camp. A "deprivation of an opportunity to have a sentencing court exercise its discretion in a defendant's favor can constitute ineffective assistance of counsel." *Kwan*, 407 F.3d at 1018 (citation and quotation marks omitted). In *Kwan*,

---

reasonable standard of care. As described below, this error resulted in prejudice because it hampered the Court's ability to exercise its discretion in sentencing Haft.

PAGE 15 – OPINION AND ORDER

the court reasoned that the defendant demonstrated prejudice because a sentencing court had the authority to exercise its discretion to permit a defendant to withdraw his guilty plea before sentencing under Federal Rule of Criminal Procedure 32(e). *Id.* The court reasoned that there was a "reasonable probability that the sentencing court . . . would have considered the significant change in the immigration consequences . . . to be a fair and just reason for withdrawing his plea." *Id.* Although Haft's situation is factually distinct from the *Kwan* case, based on the principles set forth in *Kwan* Haft need not show that the more favorable outcome "*would have been achieved* but for the counsel's error; rather, all that is necessary is showing that the *opportunity was lost* to plead for an outcome that is not outside the realm of the court's discretion to accommodate." *Rianto v. United States*, Nos. 1:12–CV–0516 AWI SKI, 1:01–CR–5063 AWI, 2012 WL 4863793, at *6 (E.D. Cal. Oct. 12, 2012) (citing *Kwan*, 407 F.3d at 1018).

*Strickland*'s requirement that the "result of the proceeding would have been different" can include prejudice that hampers a court's ability to exercise its discretionary authority. *See Strickland*, 466 U.S. at 694; *see also Kwan*, 407 F.3d at 1018. In this case, there is a reasonable probability that the ultimate sentence imposed would be altered by the information Haft's trial counsel failed to correct in the PSR. Haft's term of sentence is governed by the statutory mandatory minimum, but the Court had discretion to alter Haft's PSR pursuant to Federal Rule of Criminal Procedure 32 and to make a more detailed and vigorous recommendation to the BOP regarding where Haft should serve his sentence pursuant to 18 U.S.C. § 3621(b)(4)(B).[3] The

---

[3] The Court is not finding prejudice based on any assertion that trial counsel's error necessarily affects and controls the BOP's facility designation. Upon resentencing, if the Court were to amend the PSR and make a more specific facility recommendation to the BOP, the Court cannot guarantee that Haft will receive a different facility designation. *See Strickland*, 466 U.S. at 694. Ultimately, the BOP is free to disregard the Court's recommendation because a prisoner's facility designation is within the jurisdiction of the Attorney General. 18 U.S.C. § 3621(b)(1)-(5).

Court is empowered to evaluate Haft's PSR for factual inaccuracies and make specific and detailed recommendations to the BOP. Pursuant to Haft's proposed remedy, the Court will vacate Haft's sentence and consider modifying Haft's PSR to explain the nature of his manslaughter conviction and consider noting that Haft was a non-violent participant in the event underlying that manslaughter charge. The Court will also consider making an appropriate facility recommendation to the BOP with more specific findings.

Thus, there is a reasonable probability that the outcome of Haft's sentencing would be different had the PSR been corrected because the Court closely scrutinizes and analyzes a PSR before imposing a sentence. Although in the original sentencing the Court recommended to the BOP that "the defendant be designated to an institution with the lowest possible security level available if the defendant qualifies," Dkt. 54 at 2, this recommendation had limited practical effect because of the potentially erroneous content in paragraph 50 of the PSR. The Court also did not provide specific and detailed reasons for why Haft should serve his sentence at a Federal Prison Camp due to the absence of the information that Haft now provides. *Cf. United States v. Donn*, 661 F.2d 820, 825 (9th Cir. 1981) (explaining that where a court may have attached importance to erroneous information in a PSR, a petitioner may be entitled to relief on an ineffective assistance of counsel claim); *cf. Jones v. United States*, 783 F.2d 1477, 1482 (9th Cir. 1986) (holding that a petitioner was not prejudiced by trial counsel's failure to challenge alleged inaccuracies in a PSR where "the court did not rely on the challenged information"). Here, there is a reasonable probability that the Court will permit both an objection to and correction of Haft's PSR and make a more specific and detailed recommendation to the BOP, if the prior conviction for manslaughter has been inaccurately described in the PSR. Thus, the alleged errors in Haft's PSR resulted in prejudice and a sentencing error.

PAGE 17 – OPINION AND ORDER

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). In this case, Haft has demonstrated that trial counsel's failure to correct the narrative statement regarding his prior manslaughter conviction resulted in prejudice. Accordingly, the Court finds prejudice because trial counsel's error affected the Court's discretionary authority in sentencing. *See Kwan*, 407 F.3d at 1017.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Haft's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Dkt. 64. The Court hereby vacates and sets aside the Amended Judgment. Dkt. 54. The Court will schedule a new sentencing date and resentence Haft. Pursuant to Federal Rule of Criminal Procedure 32(e)(2), the probation officer will submit a presentence report to Haft, Haft's attorney, and the Government at least 35 days before sentencing, unless Haft waives this minimum period. Thereafter, Haft may submit any objections to the presentence report pursuant to Federal Rule of Criminal Procedure 32(f). Both parties may also submit a request relating to whether the Court should make a facility designation recommendation to the BOP and, if so, provide specific and detailed grounds for any such recommendation.

**IT IS SO ORDERED**.

DATED this 23rd day of December, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge